UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHAD BLASIUS,

Civil Action No.: 17-12420
Honorable Robert H. Cleland
Magistrate Judge Elizabeth A. Stafford

                    Plaintiff,

v.

COMMISSIONER OF
SOCIAL SECURITY,

                    Defendant.

_____/

**REPORT AND RECOMMENDATION ON CROSS-
MOTIONS FOR SUMMARY JUDGMENT [ECF. NOS. 16, 19]**

Plaintiff Chad Blasius appeals a final decision of defendant

Commissioner of Social Security (Commissioner) denying his applications

for disability insurance benefits (DIB) and supplemental social security

income benefits (SSI) under the Social Security Act.  Both parties have filed

summary judgment motions, referred to this Court for a report and

recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  After review of the

record, the Court **RECOMMENDS** that:

- Blasius's motion [ECF No. 16] be **GRANTED**;

- the Commissioner's motion [ECF No. 19] be **DENIED**; and

- the Commissioner's decision be **REMANDED** pursuant to

sentence four of 42 U.S.C. § 405(g) for further consideration consistent with this report and recommendation.

## I.   BACKGROUND

### A.   Blasius's Background and Disability Applications

Born October 14, 1983, Blasius was 31 years old when he submitted his applications for disability benefits in October 2014.  [ECF No. 11-5, Tr. 214-21].  He has a high school education and past work experience as a general factory laborer and a stores laborer.  [ECF No. 11-2, Tr. 22-23; 11-6, Tr. 246-47].  Blasius alleges a disability onset date of April 24, 2014, and that he is disabled by cerebral palsy, bad feet and back, learning disabilities, bipolar disorder, mood disorder, anxiety, nervousness, trouble retaining information, and arthritis in the lower back.  [ECF No. 11-2, Tr. 22-23; 11-6, Tr. 245].

After the Commissioner denied both disability applications initially, Blasius requested a hearing, which took place in March 2016, during which he and a vocational expert (VE) testified.  [R. 11-2, Tr. 29-67].  In a May 23, 2016, written decision, the ALJ found Blasius to be not disabled.  [*Id.*, Tr. 8-28].  The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner, and Blasius timely filed for judicial review.  [*Id.*, Tr. 1-5; ECF No. 1].

**B.    The ALJ's Application of the Disability Framework Analysis**

DIB and SSI are available for those who have a "disability." *See*

*Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  A "disability" is the

"inability to engage in any substantial gainful activity by reason of any

medically determinable physical or mental impairment which can be

expected to result in death or which has lasted or can be expected to last

for a continuous period of not less than 12 months."  42 U.S.C. §§

423(d)(1)(A), 1382c(a)(3)(A).

The Commissioner determines whether an applicant is disabled by

analyzing five sequential steps.  First, if the applicant is "doing substantial

gainful activity," he or she will be found not disabled.  20 C.F.R. §§

404.1520(a)(4), 416.920(a)(4).[1]  Second, if the claimant has not had a

severe impairment or a combination of such impairments[2] for a continuous

period of at least 12 months, no disability will be found.  *Id.*  Third, if the

claimant's severe impairments meet or equal the criteria of an impairment

set forth in the Commissioner's Listing of Impairments, the claimant will be

---

[1] Sections 1520(a)(4) and 920(a)(4), which pertain to DIB and SSI
respectively, list the same five-step analysis.

[2] A severe impairment is one that "significantly limits [the claimant's]
physical or mental ability to do basic work activities."  § 1520(c); § 920(c).

3

found disabled.  *Id.*  If the fourth step is reached, the Commissioner

considers its assessment of the claimant's residual functional capacity, and

will find the claimant not disabled if he or she can still do past relevant

work.  *Id.*  At the final step, the Commissioner reviews the claimant's RFC,

age, education and work experiences, and determines whether the

claimant could adjust to other work.  *Id.*  The claimant bears the burden of

proof throughout the first four steps, but the burden shifts to the

Commissioner if the fifth step is reached.  *Preslar v. Sec'y of Health &*

*Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Applying this framework, the ALJ concluded that Blasius was not

disabled.  At the first step, she found that Blasius had not engaged in

substantial gainful activity since his alleged onset date.  [ECF No. 11-2, Tr.

13].  At the second step, she found that Blasius had the severe

impairments of "cerebral palsy; hypertension; bipolar disorder; pervasive

developmental disorder; and borderline intellectual functioning."  [*Id.*, Tr.

14].  Next, the ALJ concluded that none of his impairments, either alone or

in combination, met or medically equaled the severity of a listed

impairment.  [*Id.*, Tr. 14-17].

Between the third and fourth steps, the ALJ found that Blasius had

4

the RFC to perform medium work[3] except:

> [F]requent operation of foot controls; no climbing ladders and
> the like; frequent balancing, stooping, kneeling, crouching and
> crawling; and no exposure to obvious hazards.  The claimant
> can also: understand, carry out and remember simple
> instructions where the pace of productivity is not dictated by an
> external source over which the claimant has no control such as
> an assembly line or conveyor belt; make judgments on simple
> work, and respond appropriately to usual work situations and
> changes in a routine work setting that is very repetitive from day
> to day with few and expected changes; respond appropriately
> to occasional contact with supervisory personnel and
> coworkers, and to brief, superficial and rare (meaning less than
> occasional but not completely precluded) contact with the
> general public; and maintain attention and concentration for two
> hour segments in an eight hour work day.

[*Id.*, Tr. 17].  At step four, the ALJ found that Blasius was able to perform

past relevant work as a stores laborer, thus rendering a finding that he was

not disabled.  [*Id.*, Tr. 22-23].

## II.   ANALYSIS

### A.

Pursuant to § 405(g), this Court's review is limited to determining

whether the Commissioner's decision is supported by substantial evidence

and was made in conformity with proper legal standards.  *Gentry v. Comm'r*

---

[3] "Medium work involves lifting no more than 50 pounds at a time with
frequent lifting or carrying of objects weighing up to 25 pounds. If someone
can do medium work, we determine that he or she can also do sedentary
and light work."  20 C.F.R. §§ 404.1567(c) and 416.967(c).

*of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks and citation omitted).  Only the evidence in the record below may be considered when determining whether the ALJ's decision is supported by substantial evidence.  *Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007).

Blasius argues that the ALJ violated the treating physician rule and improperly weighed the opinion evidence of Maureen Noble, M.D., and that she mischaracterized the record.  The Court finds that the ALJ's decision is not supported by substantial evidence, and that the decision should be remanded for further consideration.

**B.**

Blasius argues that the ALJ violated the treating physician rule by giving insufficient weight to the 2014 and 2016 opinions of Dr. Noble without providing good reasons.  The Commissioner responds that the ALJ's treatment of the opinion evidence was supported.

The "treating physician rule" requires an ALJ to give controlling weight to a treating physician's opinions regarding the nature and severity

of a claimant's condition when those opinions are well-supported by medically acceptable clinical and diagnostic evidence, and not inconsistent with other substantial evidence. *Gentry*, 741 F.3d at 727-29; *Rogers,* 486 F.3d at 242-43. "Even when not controlling, however, the ALJ must consider certain factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability of the physician's conclusions; the specialization of the physician; and any other relevant factors," and give appropriate weight to the opinion. *Gentry*, 741 F.3d at 723. In all cases, a treating physician's opinion is entitled to great deference. *Id.*

An ALJ who decides to give less than controlling weight to a treating physician's opinion must give "good reasons" for doing so, in order to "make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Rogers*, 486 F.3d at 242 (quoting SSR 96-2p, 1996 WL 374188, at *5 (1996)). This procedural safeguard not only permits "meaningful appellate review," but also ensures that claimants "understand the disposition of their cases." *Rogers*, 486 F.2d at 242-43 (internal quotation marks and citation omitted). Courts will not hesitate to remand when the ALJ failed to articulate "good reasons" for not fully crediting the treating

7

physician's opinion.  *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 545 (6th Cir. 2004).

In April 2014, Dr. Noble, who is a psychiatrist, opined that Blasius suffered from bipolar disorder and pervasive developmental disorder, with a background of cerebral palsy and hypertension.  [ECF No. 11-7, Tr. 371].  She found that Blasius had a current global assessment of functioning (GAF) score of 40, and that 40 was also his highest GAF score in the past year.[4]  [*Id.*].  Dr. Noble further opined that his thought process was slow and concrete, with very limited problem-solving skills, and that he had a restricted affect, impaired concentration, poor insight, and is socially withdrawn with limited social skills.  [*Id.*].  His prognosis was guarded.  [*Id.*].

Relating to abilities needed to perform unskilled work, Dr. Noble indicated that Blasius had "no useful ability to function" in the following areas: maintaining attention for two hour segments, sustaining an ordinary routine without special supervision, working in coordination with or proximity to others without being unduly distracted, completing a normal workday and workweek without interruptions from psychologically based

---

[4] The GAF scale is a method of considering psychological, social, and occupational function on a hypothetical continuum of mental health. The GAF scale ranges from 0 to 100, with serious impairment in functioning at a score of 50 or below."  *Norris v. Comm'r of Soc. Sec.*, No. 11–5424, 461 F. App'x 433, 436 n. 1 (6th Cir. 2012) (citations omitted).

symptoms, performing at a consistent pace without an unreasonable number and length of rest periods, accepting instructions and responding appropriately to criticism from supervisors, responding appropriately to changes in a routine setting, and dealing with normal work stress.  [*Id.*, Tr. 373].  She also found him "unable to meet competitive standards" in remembering work-like procedures, making simple work-related decisions, and asking simple questions or requesting assistance.  [*Id.*].  As for skilled or semiskilled work, Blasius had no useful ability to function in any listed capacity, and for particular jobs he was limited in maintaining socially appropriate behavior, travelling to unfamiliar places, and using public transportation.  [*Id.*, Tr. 374].

Dr. Noble found Blasius to be markedly restricted in activities of daily living, extremely limited in maintaining social functioning and maintaining concentration, persistence or pace, and to have suffered one or two episodes of decompensation within a 12 month period.  [*Id.*, Tr. 375].  She also opined that "even a minimal increase in mental demands or change in the environment would be predicted to cause [Blasius] to decompensate." [*Id.*].  According to the opinion, Blasius would be absent from work more than four days per month, he would be unable to manage benefits in his

9

own best interest, and his limitations as described have been present since "at least 2009 – 2010." [*Id.*, Tr. 376].

The ALJ gave little weight to the 2014 opinion, reasoning that it was inconsistent with Dr. Noble's treatment notes and observations. [ECF No. 11-2, Tr. 20]. She specifically noted records from October 2014 in which Blasius reported that he was "doing well" despite some "periods of feeling grouchy." [*Id.*, Tr. 19-20, citing ECF No. 11-7, Tr. 490]. Dr. Noble's notes show that he had minimal fidgeting and appropriate grooming and hygiene. [ECF No. 11-7, Tr. 491]. His speech was fluent but speech rate was decreased, and his affect was euthymic but his range was constricted. [*Id.*, Tr. 491-92]. Blasius had limited insight, tenuous judgment, and a GAF score of 40. [*Id.*, Tr. 492-93]. Dr. Noble also noted intermittent hair pulling, though the ALJ notes that this is an improvement over his previous levels of hair pulling. [*Id.*, Tr. 490; ECF No. 11-2, Tr. 19].

The ALJ then cited to a few selected pages from his 2015 and 2016 treatment records, which she said showed improvement after medication adjustments and "a few exacerbations of mood lability" that were "attributed to non-clinical, external stressors such as family and financial issues." [ECF No. 11-2, Tr. 19, citing ECF No. 11-8, Tr. 530, 532, 535, 537, 542, 552]. But that summary tells an incomplete story. In January 2015, Dr.

10

Noble described increased anxiety, irritability, and increased hair-pulling behaviors related to anxiety, which the ALJ neglected to mention despite citing to that page.  [ECF No. 11-8, Tr. 552].  His mood was described as "more grumpy" and his affect had deteriorated, going from euthymic to anxious.  [*Id.*, Tr. 554].  His next visit's notes continued to reflect increased anxiety, irritability, and hair-pulling, and his mood remained anxious.  [*Id.*, Tr. 547-49].  His medication change had only minimal benefit.  [*Id.*, Tr. 550].  Treatment notes from July 2015 were the same, and he reported "ongoing difficulty with irritability, mood instability," and had only minimal improvement in hair-pulling behaviors with Zoloft.  [*Id.*, Tr. 542, 544-45].  In September he showed some improvement in irritability and anxiety, less difficulty with hair-pulling, and no worsening of mood instability.  [*Id.*, Tr. 537].  He was still anxious and had bald spots due to hair-pulling, reporting "ongoing restlessness/fidgeting."  [*Id.*, Tr. 538-39].  His last increase in Zoloft showed mild to moderate improvement, and his dose was increased further.  [*Id.*, Tr. 540].

In November 2015 Blasius reported that things were not going well, and that his mood was "all over the place," and Dr. Noble noted "another spike in irritability with the upcoming holidays" and a "recent increase in hair-pulling behaviors."  [*Id.*, Tr. 532].  His affect remained anxious with a

11

restricted range, and he reported increased difficulty handling stressors. [*Id.*, Tr. 534-35]. Blasius's next visit revealed ongoing hair-pulling, and though "mood lability improved somewhat with [the] last dose titration of Seroquel," he continued to be "anxious and have very constricted interests." [*Id.*, Tr. 527, 530]. His medications were not adjusted. [*Id.*, Tr. 530].

In February 2016, Dr. Noble rendered a second medical source opinion, which as the ALJ notes, reiterated most of her points from the 2014 opinion, though Blasius was assessed an extreme limitation in activities of daily living, and a GAF score of 35. [ECF No. 11-2, Tr. 20, citing ECF No. 11-8, Tr. 572-577]. As with the 2014 opinion, the ALJ gave this opinion little weight for the same reasons. [ECF No. 11-2, Tr. 20].

Though the Commissioner acknowledges that the record contains support for Dr. Noble's opinions, she argues that this merely constitutes conflicting evidence that the ALJ has the duty to resolve. *See Richardson v. Perales*, 402 U.S. 389, 399 (1971); *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2002). But neither the Commissioner nor the ALJ cite to any records from 2015 or 2016 showing that Blasius had overcome his hair-pulling, had an affect that was not anxious or constricted, or had conquered his issues with irritability and difficulty interacting with others. The ALJ

12

cited only to a euthymic mood, intermittent hair-pulling, and minimal fidgeting in 2014, and "reported improvement" in 2015 and 2016. [ECF No. 11-2, Tr. 19]. But the 2015 and 2016 records, as summarized above, do not reflect a continuously improving situation; rather, Blasius's condition improved and declined in equal measure despite constant increases in his medication dosages.

The Commissioner also argues that the treatment notes include a number of "unremarkable or benign objective findings," which supports the ALJ's treatment of the medical opinions. [ECF No. 19, PageID.668-69]. But the Commissioner fails to explain how Blasius's record of logical thought processes, cooperative manner, and lack of hallucinations counteract his other consistent abnormal findings. A finding of disability does not require a claimant to have remarkable or abnormal findings in every measurable area. The ALJ's decision is based upon fragments of the evidence, failing to fully "take into account whatever in the record fairly detracts from its weight." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (internal quotation marks and citation omitted).

The ALJ also discounted Dr. Noble's opinions due to her short lengths of visits, which were each reported to last 15 to 30 minutes. [ECF No. 11-2, Tr. 20, citing ECF No. 11-7, Tr. 371 and ECF No. 11-8, Tr. 572].

13

The Commissioner asserts that it was "entirely appropriate" for the ALJ to consider the length of each treatment session, [ECF No. 19, PageID.673], but the regulations it cites—20 C.F.R. §§ 404.1527, 416.927—say nothing about the length of a treatment *visit*. Those regulations indicate that the "length of the treatment relationship and the frequency of examination" are important factors in assessing medical opinions. §§ 404.1527(c)(2)(i); 416.927. They also indicate that the treating physician rule is predicated on the detailed, longitudinal picture and unique perspective that treating sources provide:

> 'Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.'

*Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 651 (6th Cir. 2011) (quoting § 404.1527(d)(2)). Despite these regulations, the ALJ gave greater weight to the opinion of the state agency consultant, Jung Kim, M.D., whose second-hand assessment was based on Dr. Noble's notes, which Blasius correctly describes as detailed, unique to each visit, and informative. [ECF No. 11-2, Tr. 21; ECF No. 11-3, Tr. 102-04; 115-18; ECF No. 16, PageID.647].

And although Dr. Kim had the benefit of Dr. Noble's notes and

opinions, he did not share Dr. Noble's ability to observe Blasius, and Dr.

Noble's observations are entitled to deference.

> [W]hen mental illness is the basis of a disability claim, clinical
> and laboratory data may consist of the diagnosis and
> observations of professionals trained in the field of
> psychopathology. The report of a psychiatrist should not be
> rejected simply because of the relative imprecision of the
> psychiatric methodology or the absence of substantial
> documentation, unless there are other reasons to question the
> diagnostic techniques.

*Blankenship v. Bowen*, 874 F.2d 1116, 1121 (6th Cir. 1989) (citations and

internal quotation marks omitted). *See also Keeton v. Comm'r of Soc. Sec.*,

583 F. App'x 515, 526 (6th Cir. 2014) (quoting *Blankenship* and noting "the

difficulty inherent in proving psychological disabilities.").  In short, the length

of Blasius's sessions with Dr. Noble is not legally significant, whereas Dr.

Noble's longitudinal and unique perspective is legally meaningful.

The ALJ found that Dr. Noble's opinions also contained GAF scores

of 35 and 40 that were inconsistent with many of Dr. Noble's records

indicating GAF scores of 55.  But the Commissioner admits that the ALJ's

analysis in this regard is not accurate.  [ECF No. 19, PageID.672].  The

ALJ cites GAF scores of 55 rendered by Dr. Noble in November 2011,

February 2013, and November 2014 as conflicting with the lower GAF

scores in the medical opinions.  [ECF No. 11-2, Tr. 20, citing ECF No. 11-7,

Tr. 449, 473, 498].  But two of these scores predate Blasius's alleged onset date, and none are from within a year prior to either of Dr. Noble's opinions. Thus, Dr. Noble's statements that Blasius's highest GAF scores in the past year were 40 and 35, respectfully, are not disproven by the evidence that the ALJ cites.  [ECF No. 11-7, Tr. 371; ECF No. 11-8, Tr. 572].  And in fact Dr. Noble assessed scores of 40 three times in 2014.  [ECF No. 11-7, Tr. 478, 488, 493].  The ALJ was not required to put much stock in the GAF scores.  *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 511 (6th Cir. 2006).  But she relied on Dr. Noble's GAF scoring to establish good reasons for giving Dr. Noble's opinions little weight, and her analysis was erroneous.

Lastly, the ALJ discredited Dr. Noble's opinions because they stated that Blasius would suffer one or two episodes of decompensation within a twelve-month period, which she found was "not borne out by the record." [ECF No. 11-2, Tr. 20, citing ECF No. 11-7, Tr. 375; ECF No. 11-8, Tr. 576].  The ALJ stated that Blasius's sole episode of decompensation was caused by a medication reaction.  [ECF No. 11-2, Tr. 20, citing ECF No. 11-7, Tr. 339].  This conclusion is questionable, and is not a good reason to discount the weight given to Dr. Noble's medical opinion.

16

Episodes of decompensation have been defined as "'exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace.'" *Larson v. Astrue*, 615 F.3d 744, 749–50 (7th Cir. 2010) (quoting 20 C.F.R. Pt. 404, Subpart P., App. 1, § 12.00). "The listing recognizes that an episode may be inferred from medical records showing a significant alteration in medication." *Id.* The forms Dr. Noble filled out included the same definitions of episodes of decompensation. [ECF No. 11-7, Tr. 375; ECF No. 11-8, Tr. 576].

As described above, Dr. Noble's records described increases of anxiety and related hair-pulling—to the point of balding—and multiple alterations of medication. [ECF No. 11-8, Tr. 527, 530, 532-35, 537-40, 542, 544-45, 547-49, 552]. This record does not contradict Dr. Noble's opinion that Blasius is susceptible to periods of decompensation. And even if Dr. Noble's interpretation of the definition of an episode of decompensation was off the mark, such a legal error would not give the ALJ a good reason to discount the weight given to the entirety of her medical opinions. Dr. Noble is a psychiatrist, not a lawyer, and her mental health opinions are the ones that are entitled to deference.

17

The ALJ failed to provide the good reasons necessary to afford Dr. Noble's opinions less than controlling weight, and this matter should be remanded.

## C.

Blasius also argues that the ALJ mischaracterized the evidence relating to his mental impairments.  The Court agrees.  Some examples of the ALJ mischaracterizing and relying on fragments of the record are described above.  In his motion, Blasius cites other valid examples.

Citing an April 2014 visit to Dr. Noble, the ALJ stated that Blasius reported feeling "OK," being more stable due to a morning dose of Seroquel, and having no significant depression.  [ECF No. 11-2, Tr. 19, citing ECF No. 11-7, Tr. 480].  She referenced his hair-pulling but failed to mention Dr. Noble's observations that he "often isn't even aware that he is doing it," that he "[c]ontinues to have difficulty with concentration and sustaining his attention," and that he "again minimizes his symptoms." [ECF No. 11-7, Tr. 480, 483].  The ALJ also failed to mention Dr. Noble's assessment that he had limited insight and tenuous judgment.  [*Id.*, Tr. 482].  Dr. Noble's findings regarding Blasius's insight, judgment, and lack of awareness of his own symptoms undermine the ALJ's decision to rely on Blasius's self-assessment.

And April 2014 was not the first time in which Blasius was observed to be a poor reporter of his own symptoms.  In March 2014, Dr. Noble saw Blasius and his mother due to his mother's concerns that he "may not be fully reporting his symptoms/degree of limitations."  [*Id.*, Tr. 475].  His mother noted that though his moods have become more stable, he continued to struggle with low frustration tolerance, managing stressors and changes in routine, and managing minor interpersonal conflicts.  [*Id.*].  Dr. Noble noted that Blasius agreed with his mother's assessment but still minimized his symptoms "even as he [was] acknowledging them."  [*Id.*]  This visit occurred just prior to Blasius's alleged onset date, but it lends credence to Dr. Noble's report in April 2014 that he was not self-aware and minimized his symptoms.  The March 2014 report was not mentioned by the ALJ.

The ALJ noted that Blasius's mood during the April 2014 visit was "euthymic," as it was in October 2014.  [ECF No. 11-2, Tr. 19; citing ECF No. 11-7, Tr. 477, 492].  But she failed to note that his mood was consistently and without deviation found to be "anxious" throughout 2015 and 2016.  [ECF No. 11-2, Tr. 19; ECF No. 11-8, Tr. 530, 535, 539, 549, 554].

19

The ALJ's analysis of Blasius's 2015 and 2016 records was particularly threadbare.  She referenced "a few exacerbations of mood lability" and his "reported improvement," but made no mention of his improvement being minimal, [ECF No. 11-8, Tr. 550], of two references to his hair pulling symptoms increasing, [*Id.*, Tr. 532, 542], or of symptoms such as "ongoing restlessness/fidgeting," [*Id.*, Tr. 539].  And as previously noted, the ALJ was silent as to Blasius's anxious and constricted moods, limited insight, and tenuous judgment throughout 2015 and 2016.  [ECF No. 11-8, Tr. 530, 535, 539, 549, 554].

As with the medical opinion evidence, the ALJ's analysis of Dr. Noble's treatment notes is insufficient to allow for meaningful review.

## III.    CONCLUSION

For the reasons stated above, the Court **RECOMMENDS** that Blasius's motion for summary judgment [ECF No. 16] be **GRANTED**; that the Commissioner's motion [ECF No. 19] be **DENIED**; and the ALJ's decision be **REMANDED** for further proceedings consistent with this report and recommendation.

s/Elizabeth A. Stafford
ELIZABETH A. STAFFORD
United States Magistrate Judge

Dated: July 24, 2018

20

## <u>NOTICE TO THE PARTIES REGARDING OBJECTIONS</u>

Either party to this action may object to and seek review of this

Report and Recommendation, but must act within fourteen days of service

of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ.

P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any

further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v.*

*Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991)*; United States v. Walters*,

638 F.2d 947 (6th Cir. 1981).  Filing objections which raise some issues but

fail to raise others with specificity will not preserve all objections that party

might have to this Report and Recommendation.  *Willis v. Secretary of*

*HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers*

*Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  A copy of any objection

must be served upon this Magistrate Judge.  E.D. Mich. LR 72.1(d)(2).

Each **objection must be labeled** as "Objection #1," "Objection #2,"

etc., and **must specify** precisely the provision of this Report and

Recommendation to which it pertains.  Not later than fourteen days after

service of objections, **the non-objecting party must file a response** to

the objections, specifically addressing each issue raised in the objections in

the same order and labeled as "Response to Objection #1," "Response to

Objection #2," etc.  The response must be **concise and proportionate in**

**length and complexity to the objections**, but there is otherwise no page

limitation.  If the Court determines that any objections are without merit, it

may rule without awaiting the response.


## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on July 24, 2018.

s/Marlena Blasius
MARLENA BLASIUS
Case Manager